[Nos. 2452 and 2612.   Decided June 16, 1897.]

C. L. SHELDON, *Appellant*, v. E. W. PURDY, *as Treasurer of Whatcom County, et al., Respondents.*

N. W. HARRIS & Co., *Appellants*, v. E. W. PURDY, *as Treasurer of Whatcom County, et al., Respondents.*

SCHOOL DISTRICTS — BONDS — PAYMENT OF INTEREST.

Gen. Stat., § 2702, declaring that the county treasurer must pay out of any moneys belonging to the school district the interest upon any bonds issued by the school district under §§ 2697-2701, authorizing districts to borrow money and issue coupon bonds therefor, when the same become due and are presented at the treasurer's office, is applicable only to moneys belonging to the school district in the special interest fund for payment of interest upon bonds, and is unconstitutional, in so far as it purports to command the treasurer to pay interest coupons from moneys raised by taxation for other school purposes. (Munson v. Mudgett, 15 Wash. 321, distinguished.)

Appeal from Superior Court, Whatcom County.—Hon. JOHN R. WINN, Judge.   Affirmed.

*Ira Bronson,* and *Burke, Shepard & McGilvra,* for appellants.

*Kerr & McCord, Black & Leaming,* and *Fairchild & Bruce,* for respondents.

The opinion of the court was delivered by

REAVIS, J.—Plaintiff Sheldon made application for a writ of mandamus to compel defendant Purdy, as treasurer of Whatcom county, to pay coupons due upon bonds issued by school district No. 25, which coupons were for interest due on bonds November, 1893 and 1894.   The affidavit for the writ stated that the treasurer had funds in his hands belonging to the school district sufficient to pay the

coupons. The county treasurer answered that the plaintiff's bonds were an issue of $10,000, made November 1, 1891, and that November 1, 1890, a prior issue of bonds, a part of the same series, and under the same vote of authorization, was made by the district, amounting to $30,000, the interest upon which since November 1, 1893, is also in default; that the school district's money in his hands is in two funds, one of which is known as the general or apportionment fund, and is composed chiefly of moneys apportioned to said district by the county superintendent on the general school funds of the county by taxation in the county for general school purposes, which comprise also moneys received from the state of Washington from the permanent school fund, and the other of the funds is known as the special fund of the school district, and is composed and made up of the taxes collected from the special levy of taxes ordered by the directors, which was made for the purpose of, and in an amount at that time by the board deemed to be sufficient to pay and defray, all current expenses of the school district, including interest on bonds and outstanding warrants issued for current expenses, and that no levy or order was made for a tax to be applied exclusively for the payment of interest on any bonds of the district. The plaintiffs N. W. Harris & Co. were the owners of the $30,000 issue of bonds mentioned in the treasurer's answer, and likewise presented interest coupons due on said bonds, amounting to $1,050, to the county treasurer, and demanded payment of their interest, and applied to the superior court for a peremptory writ of mandamus compelling the county treasurer to pay their interest coupons. In each action the Blaine National Bank intervened, and alleged; That the $40,000 series of bonds issued by the school district and held by the plaintiffs in both actions was issued by authority of a special election

called by the school district in pursuance of the statute to vote upon the proposition of allowing the district to borrow money and issue negotiable coupon bonds therefor to the amount of $40,000; said money to be used for the following pusposes: "First. In constructing a central school house or building on block No. 17 in Warren's First addition to the town of Blaine, Whatcom county, Washington, and for providing the same with all' necessary furniture and apparatus. Second. For purchasing lots Nos. 4, 5 and 6 in block No. 17 of the original town site of Blaine, Whatcom county, Washington, at an agreed price of five hundred dollars per lot, as a school house site, and for the purpose of constructing on the said site a ward school house or building, and to provide the same with the necessary furniture and apparatus. Third. For purchasing lots Nos. 2, 3 and 4 in block No. 2 in Rostangh's first addition to the town of Blaine, Whatcom county, Washington, as a school site or sites, at an agreed price of five hundred dollars per lot, and for the purpose of building thereon a ward school house or building and to provide the same with all necessary furniture and apparatus. Fourth. For the purpose of funding and redeeming the then outstanding indebtedness of the said school district; said bonds, if issued, to bear a rate of interest not to exceed ten per cent. per annum, payable semi-annually, and to be payable in twenty years from date." That at the date of the issuance of the bonds there were outstanding a large amount of warrants issued by the school district for current expenses in support of the school, which warrants were, by the terms and conditions upon which the bonds were issued, to be funded, and to be paid by the proceeds of the sale of the bonds, and prior to the date of the issuance of the last series, the $10,000, dated November 1, 1891, the district issued a large amount of warrants for moneys

due for the purchase of school-house sites, and also for money due for labor performed in the construction of a school house. That the intervenor is the holder and owner of the warrants issued for the purchase of the school-house site to the amount of $164.34, and of the warrants issued for the construction of the school house in the amount of $127.90, and of the warrants which were to be funded and paid by the moneys received from the sale of the bonds, the amount of $374.50. That the intervenor also owns and is in possession of the other warrants of the school district, issued for the current expenses incidental and necessary to the maintenance of the school, to the amount of $339.03, and all of which warrants had been presented to the county treasurer, and payment was refused, and the treasurer indorsed thereon, "Presented for payment, and payment refused for want of funds." And that the warrants were registered by the treasurer. The two actions are heard together here. It is admitted that there is in the custody of the county treasurer, defendant, a cash balance of $1,320.59 in the general or apportionment fund of the school district, and in the special fund heretofore mentioned a cash balance of $1,725.41, and that prior to the presentation to the county treasurer of the interest coupons referred to and held by them, and prior to the maturity of any interest coupons of the school district, there had been issued by the school district for the annual current expenses, including the money due from the district for the salary of teachers, fuel and other current and necessary annual expenses for conducting the schools in the district, warrants to the amount of $6,959.80, which warrants had been presented to the defendant Purdy as treasurer, and registered as outstanding warrants of the district, and each of said warrants indorsed, "Presented for payment, and not paid for want of funds;" and that the $339.03 of the war-

rants held by the intervenor were a part of the series of warrants last above mentioned.

Constitution, §§ 1-3, art. 9, created a common school fund, which shall be exclusively applied to the support of common schools. The legislature embodied the constitutional provisions in §§ 815, 816 (1 Hill's Code). Sec. 817 of that Code has provided additional support for schools by creating a county school fund, which is supplied by direct levy upon each county by the county commissioners, and into this fund also are paid fines for breach of penal laws of the state. Sec. 818 also provides that a special tax may be levied by the school district for furnishing additional school facilities, for the payment of teachers' wages, building school houses, repairing and furnishing apparatus, and limits the tax to five mills on the dollar, unless authorized by vote of the electors of the district at an election held for that purpose. It will be observed that § 818 does not make any provision for payment of interest due on school district bonds. The above sections are all found under the title of "Public Education," in Hill's Code. Sec. 2697 (1 Hill's Code), contains the authority which enables school districts to borrow money and issue negotiable coupon bonds therefor. That section and the ones following, to and inclusive of § 2701, contain all the authority for the issuance of negotiable coupon bonds, as held by plaintiffs, by school districts, and the measure of the liability of the districts therefor, and the mode of the payment of both principal and interest of such bonds. Sec. 2701 prescribes the duty of directors to ascertain and levy annually the tax necessary to pay the interest on such bonds as it becomes due, with a further provision for levy of a tax to meet principal of the bonds. Sec. 2702 declares that the county treasurer must pay out of any moneys belonging to the school district the interest upon any bonds issued

under this act by such school district, when the same becomes due, upon presentation at the treasurer's office. Under this last section, plaintiffs maintain that interest due on school district bonds is preferred to any other liability of the district, and must be paid when there are any funds belonging to the district in possession of the county treasurer. If it were not for these provisions, that the treasurer must pay out of any moneys belonging to the district interest upon any bonds issued under this act, there would be no controversy among the parties now before the court. The plaintiffs and the intervenor are alike creditors of school district No. 25. The relation of debtor and creditor exists between them. There can be no reason found in their respective contracts why either creditor should be preferred to all the other creditors. But it is contended by plaintiffs that § 2702 establishes their preferential right to payment. We do not think a fair construction of the legislation mentioned before establishes such preference. The county treasurer has money in two funds —one arising from the apportionment of the county superintendent, which includes the money appropriated by the state and paid into the common school fund, and the other collected under a tax levied by the county commissioners under § 817, above mentioned. This fund, under the constitution, is devoted to the support of the public schools. That portion coming from the irreducible common school fund is devoted to the payment of current expenses. The building of new school houses and the purchase of school house sites do not come within any authorized signification of "current expenses." Neither do they come within any well-defined acceptation of "support of the common schools." Both the terms "support" and "current expenses," when applied to the common schools of this state, mean continuing regular expenditures for the maintenance

of the schools. Building a new school house and purchasing a site, while at times necessary and proper, are unusual and extraordinary expenditures; and the legislature, in consonance with the constitution, has evidently had this in mind. Two methods have been provided for building school houses—the first by a special tax levied by the district as provided in § 818, and the second as prescribed by § 2697—the bond act. In both ways the school district, alone and locally, assumes the responsibility of the expenditure; and it may not divert taxes raised for other purposes by the county commissioners, and paid by a general tax of the county, and aided by appropriations from the state to the payment of its special local debt. Sec. 5, art. 7 of the constitution, provides, " No tax shall be levied except in pursuance of law; and every law imposing a tax shall state distinctly the object of the same, to which only it shall be applied." This is an elementary doctrine in taxation, and without the constitutional declaration it has been held almost uniformly that there could be no diversion of moneys collected by taxation for a special purpose, and placed in a fund created for such purpose. Sec. 2702, 1 Hill's Code, evidently imposed the duty upon the county treasurer to pay, out of any moneys belonging to the school district in the special interest fund for payment of interest upon bonds, any moneys in such fund, on presentation of interest bonds, and can go no further. Notwithstanding its express declaration, that section, in so far as it purports to command the treasurer to pay interest coupons from moneys raised by taxation for another purpose, is unconstitutional, and therefore void. The case of *Munson v. Mudgett*, 15 Wash. 321 (46 Pac. 256), is cited by counsel for plaintiffs as controlling in the decision of this case. That case, however, arose under § 2681 of the General Statutes providing that interest coupons upon bonded indebtedness

of counties should rank as warrants upon the general fund; and it was held that such coupons were payable in the order of their issuance or date, of equal rank with county warrants on the genral fund, and we cannot rule that it is applicable here.

The superior court denied both plaintiffs' applications for mandamus, and directed the payment of warrants held by intervenors, and its judgment is affirmed.

Scott, C. J., and Anders and Gordon, JJ., concur.