[No. 27588. Department Two. June 16, 1939.]

THE STATE OF WASHINGTON, *on the Relation of The State Board For Vocational Education, Plaintiff,* v. CLIFF YELLE, *as State Auditor, Respondent.*[1]

*E. W. Anderson,* for relator.

*The Attorney General, W. A. Toner* and *Browder Brown, Assistants,* for respondent.

BLAKE, C. J.—June 2, 1920, the Congress passed an act entitled:

[1]Reported in 91 P. (2d) 573.

"An Act to provide for the promotion of vocational rehabilitation of persons disabled in industry or otherwise and their return to civil employment."

The act and its subsequent amendments carry appropriations available to states in designated ratios, upon their acceptance of the program comprehended by the act. As a condition to obtaining its allotment of such appropriations, however, the state must appropriate from its own funds an equal amount for rehabilitation of persons coming within the purview of the act.

In 1933, the legislature accepted the benefits of the act of Congress and designated the state board for vocational education as the agency

". . . to co-operate with the Federal Board for Vocational Education in carrying out the provisions of said Act of Congress, . . ." Laws of 1933, chapter 176, p. 685, Rem. Rev. Stat. (Sup.), § 4925-1 [P. C. § 4883-8] *et seq.*

In the act providing for general appropriations for the biennium beginning April 1, 1939, and ending March 31, 1941 (Laws of 1939, chapter 223, pp. 935, 940) the legislature appropriated *"from the current school fund,"* for the state board for vocational education, the sum of $64,342.30 "to secure Federal Vocational Rehabilitation Fund" in a like amount.

The state board having incurred expenses for vocational rehabilitation in the sum of $476.25, approved vouchers in that amount which were presented to the state auditor with the request that warrants therefor be drawn against *the current school fund.* The auditor, conceiving that the expenses for which the vouchers were issued had not been incurred for the support of the common schools, declined to draw warrants therefor on the current school fund. The board brought this action for a writ of mandate to compel the auditor

to draw warrants as requested upon "the current school fund."

The relator concedes that the expenses incurred were not for the support of the common schools. It also concedes that the "common school fund" contemplated by Art. IX, §§ 2 and 3, cannot be appropriated to any use but for the support of the common schools. See *Sheldon v. Purdy*, 17 Wash. 135, 49 Pac. 228; *School Dist. No. 20 v. Bryan*, 51 Wash. 498, 99 Pac. 28, 20 L. R. A. (N. S.) 1033; *Collins v. Henderson*, 74 Ky. 74; *State Female Normal School v. The Auditors*, 79 Va. 233. Its position is that the "current school fund," upon which it requests that warrants be drawn, is not the "common school fund" contemplated by those provisions of the constitution.

Art. IX, § 2, provides:

"The legislature shall provide for a general and uniform system of public schools. The public school system shall include common schools, and such high schools, normal schools, and technical schools as may hereafter be established. *But the entire revenue derived from the common school fund, and the state tax for common schools, shall be exclusively applied to the support of the common schools.*" (Italics ours.)

Art. IX, § 3, defines the sources, of which there are nine, of the "common school fund." The portion of that section in which we are now especially interested provides:

"The said fund shall be derived from the following named sources, to wit: *Appropriations . . . by the state to this fund; . . .*" (Italics ours.)

As we understand it, relator's position rests, not so much on any technical difference between the term "current school fund" used in the statute and the term "common school fund" used in the constitution, but rather upon the source from which the major portion

of the fund derives. The "current school fund" derives principally from excise tax receipts allocated to it by the terms of Title XIX, chapter 180, Laws of 1935, p. 846, § 211, as amended by chapter 227, Laws of 1937, p. 1165, § 22, and chapter 225, Laws of 1939, p. 1016, § 31, Rem. Rev. Stat. (Sup.), § 8370-211 [P. C. § 7030-271].

As we see it, in the light of Art. IX, §§ 2 and 3, the question to be determined is whether the excise tax receipts so allocated have been *appropriated* by the legislature for the support of the common schools. To find an answer to the question, we must turn again to chapter 223, Laws of 1939, p. 935, and to chapter 174, Laws of 1939, p. 527. The latter is an act relating to school revenues. It provides:

"The interest accruing on said permanent school fund, together with all rentals and other revenues derived therefrom, and from lands and other property devoted to the common school fund, *and from revenues from other sources allotted thereto, shall be exclusively applied to the current use of the common schools.* In addition thereto it shall be the duty of the State Board of Equalization, annually, at the time of levying taxes for other state purposes, to levy a tax not to exceed five mills on the dollar, upon all taxable property within the state sufficient to produce a sum, which, when added to the amount of money derived from interest and other income from the state permanent school fund during the preceding school year and to the amount of money collected *and allotted to the current use of the common schools of the state during the preceding school year from any other kind of tax or taxes that may hereafter be provided by law,* shall equal twenty-five cents per day per pupil for each day's attendance in the common schools of the state during the preceding school year allotted to the several school districts of the state by the Superintendent of Public Instruction as herein provided . . .

"The Superintendent of Public Instruction shall certify, on or before the first day of September of each

year, to the State Board of Equalization the total current state school fund for the year as herein computed. This amount shall constitute the basis for the state levy for current use to be applied exclusively to the common schools. The fund provided by this section shall be known as the current state school fund."

In the general appropriations act, chapter 223, Laws of 1939, the legislature appropriated $34,500,000 "from the current school fund" for the biennium—April 1, 1939, to March 31, 1941. This is the amount necessary for the support of the common schools during that period, computed in the manner prescribed by chapter 174, Laws of 1939. By these enactments, it seems apparent that the legislature meticulously endeavored to carry out the constitutional mandate to provide for a common school system. It is our view that the $34,-500,000, computed, as it is, on the basis prescribed by chapter 174, Laws of 1939, constitutes a component part of the common school fund contemplated by Art. IX, § 3, of the constitution, since it comes from one of the sources defined by § 3 of that article, namely, from an "appropriation . . . by the state."

The fact that the major portion of the $34,500,000 is to be derived from anticipated revenues from excise taxes makes the appropriation no less effective than had it been made from cash on hand. In so far as those revenues *have been* allocated to the support of the common schools, they constitute a "state tax for the common schools" in contemplation of Art. IX, § 2, of the constitution. That the legislature might, in the first instance, have allocated these anticipated revenues to other purposes, is beside the question.

Nor is it of any moment that failure of the appropriation—of the $64,342.30 for vocational rehabilitation —will prevent the state, during the present biennium, from participating in the Federal funds allottable under

the act of June 2, 1920. That is unfortunate. But to admit the proposition that revenues, once appropriated to the support of the common schools, could subsequently be diverted to other purposes, would be calamitous. For, as was observed by the supreme court of Kentucky in *Collins v. Henderson, supra:*

"If it be once conceded that an appropriation like this may be sustained on the ground that it is in some degree beneficial to, and is, therefore, in aid of common schools, then the number and amount of such appropriations will be limited only by the discretion of the legislature, and if it so wills, the whole fund may be diverted from the purpose to which it was solemnly dedicated, or rather re-dedicated, by the constitution, and the constitutional provision prove a mere *brutum fulmen.*"

Writ denied.

SIMPSON, MAIN, BEALS, and GERAGHTY, JJ., concur.