

# THE ATTORNEY GENERAL
# OF TEXAS

**AUSTIN 11, TEXAS**

GERALD C. MANN

~~XXXXXXXXXXXXXXXXXX~~

ATTORNEY GENERAL

Honorable Ralph Logan
County Attorney
Tom Green County
San Angelo, Texas

Dear Sir:

Opinion No. O-4573
Re: Whether the San Angelo Independent
School District has the authority
to purchase a building site for
the San Angelo Junior College out
of the General Tax Funds levied for
the maintenance of the San Angelo
Public Schools, provided the 20%
limit is not exceeded. And related
questions.

Your letter of April 29, 1942, requesting an opinion
from this department has been received and carefully consid-
ered. We quote from this letter:

"An opinion has been requested of my office
concerning the legality of the purchase of land
by the San Angelo Independent School District as
a building site for the San Angelo Junior College.
The San Angelo Junior College was organized and
established in 1929, and has been maintained by
the San Angelo Independent School District since
that time, under the provisions of Article 2815h,
Vernon's Annotated Civil Statutes. Recently the
space now occupied by the College has become in-
adequate in the opinion of the trustees, and the
Board preceeded to purchase a site just outside
of the city limits and the limits of the San
Angelo Independent School District."

Upon this statement of facts you have asked the two
following questions:

"1. Has the San Angelo Independent School
District the authority to purchase a building
site for the San Angelo Junior College out of
the general tax funds levied for the maintenance
of the San Angelo Public Schools, provided the
20% limit is not exceeded?

"2.  Assuming the trustees of the San Angelo
Independent School District have the authority to
purchase a building site, do the statutes contemplate
the purchase of a site outside of the limits of
the school district?"

The administration and control of a junior college
established and maintained by an independent school district
is vested in the Board of Education of such district and such
Board has all of the powers given them under the terms of the
Act providing for the establishment and maintenance of Junior
Colleges by independent school districts and also the duties
and powers of the trustees of an independent school district.
See Article 2815h, Section 4, Vernon's Annotated Texas Civil
Statutes.

The Junior College District has power to issue  bonds
for construction of buildings and purchase of sites therefor
and to levy necessary taxes to retire such bonds, and to levy
and collect taxes for support and maintenance of the Junior
College.  Article 2815h, Section 7, Vernon's Annotated Texas
Civil Statutes.  This statute further provides for an elec-
tion authorizing the issuance of such bonds and levy of such
taxes.

The statutes provide, however, that the Board  of
Trustees of an independent school district may set aside 20%
of the taxes collected for the maintenance of a Junior College
created in said district without the necessity of an election,
provided that such district had been using such funds for
Junior College purposes prior to October 1, 1936.  See Article
2815h, Section 7a. Vernon's Annotated Texas Civil Statutes.
In view of the statement of facts given by you, we are assuming
that Article 2815h, Section 7a is applicable to the San Angelo
Independent School District and the San Angelo Junior College.

The above cited and related statutes regulating estab-
lishment and maintenance of Junior Colleges being silent upon
the exact question asked by you, we find it necessary to refer
to the general laws conferring powers on trustees of independ-
ent school districts and decisions construing such laws.

Article 2827, Section 2, Vernon's Annotated Texas Civil
Statutes, reads in part as follows:

"Local school funds from district taxes, tuition
fees of pupils not entitled to free tuition and
other local sources may be used for the purposes
enumerated for state and county funds and for pur-
chasing appliances and supplies, for the payment of

insurance premiums, janitors and other employees,
for buying school sites, buying, building and
repairing and renting school houses, and for other
purposes necessary in the conduct of the public
schools to be determined by the Board of Trustees,
the accounts and vouchers for county districts to
be approved by the county superintendent; provided,
that when the State available school fund in any
city or district is sufficient to maintain the
schools thereof in any  year  for  at  least eight
months, and leave a surplus, such surplus may be
expended for the purposes mentioned herein."

Article 2784, Vernon's Annotated Texas Civil Statutes,
authorizes the trustees of an independent school district to
levy taxes and issue bonds, after an election for such pur-
pose, to construct buildings and purchase sites therefor.

Article 2749, Vernon's Annotated Texas Civil Statutes
contains the following language:

". . . . provided, that the trustees, in making
contracts with teachers, shall not create a defi-
ciency debt against the district."

The case of Love v. Rockwall Independent School Dis-
trict, Texas Civil Appeals, 194 S.W. 659, involved a state of
facts in which an election had been held in a newly created
independent school district to determine whether trustees
should levy and collect an annual tax not to exceed 50¢ on the
$100 valuation "for the support and maintenance of public free
schools therein". After the election the trustees levied a
tax of 35¢ per $100 valuation for support and maintenance of
the schools and a tax of 15¢ per $100 valuation to pay out-
standing bonded indebtedness on buildings of common school
districts taken over by independent school districts.  The
court enjoined the collection of the tax holding that the 15¢
tax for bonds on old buildings was not "support and mainten-
ance" as that term was used in the election.  The court used
the following language in its opinion.

"We have found in our reports no opinions con-
struing the term 'support and maintenance of the
public free schools' as used at the election.
'Maintain' and 'support' are synonymous and in a
general sense mean 'to hold in an existing state or
condition'.  (Century dictionary)  In our statutes
relating to school taxes 'maintain' is used in con-
tradistinction to debts.  Article 2857 Vernon's
Sayles Civil Statutes.  There it is said that the

county school trustees may submit to the voters
two questions. One being whether they shall levy
and collect a special tax for the 'maintenance
of schools' and another being whether they shall
levy and collect a special tax for the purchase
of site and the construction etc. of public free
school buildings. In other jurisdictions it has
been ruled that support used in reference to com-
mon schools means continuing regular expenditures
for the maintenance of said schools so that a fund
for the support of said schools cannot be used for
purchasing a school site or constructing a build-
ing thereon. Sheldon v. Purdy, 17 Washington,
135, 49 Pac. 228; Roach v. Gooding, 11 Idaho, 244,
81 Pac. 642. If then a fund voted for the sup-
port of the common school may not be used to pur-
chase a site and build a school house, neither
may such a fund be used for the purpose of paying
the debt owing therefor as in the case at bar.
Such conclusion, we believe, to be sound in prin-
ciple and reason."

We believe that the answer to your first question is
controlled by the case of Madeley, et al. v. Trustees of Conroe
Independent School District, Texas Civil Appeals, 130 S.W.
(2d) 929 (writ of error dismissed--correct judgment). The
Conroe Independent School District had a sufficient surplus
in its maintenance fund to operate the school for a year
without the levy of a maintenance tax. The trustees levied a
maintenance tax and contracted to erect needed buildings with
the surplus on hand. A taxpayer sued to enjoin the collection
of the tax and also to enjoin payment for construction of
buildings out of surplus maintenance funds. In affirming a
judgment of the trial court denying the injunction prayed for
the Court used the following language:

"Construing Articles 2784 and 2827 in pari
materia the local tax levied and collected by the
trustees of an independent school district for
the maintenance of the school can be used only
for the purposes of maintenance to the extent
needed for that purpose, and the tax collected
under Section 2 of Article 2784 can be used only
to recall bonds voted for the erection of a school
building etc. to the extent that it is needed for
that purpose. We think this conclusion on appli-
cation of the rule of in pari materia has support
in the holding of Love vs. Rockwall Independent
School District, Texas Civil Appeals, 194 S.W.
659, that the term 'maintenance' of schools does

not include the cost of construction of school buildings.

" . . . . .

"Its allocation to the maintenance fund was by legislative edict for the purpose of supporting and maintaining the public free school. When that purpose has been effectuated the fund is no longer subject to the control of the statutes for the purpose of the statutes has been fully effectuated. If and when the statutes cease to control the fund then it becomes a constitutional fund and not a statutory fund and may be used by the trustees for the constitutional purpose; one of the constitutional purposes is 'the erection and equipment of school buildings' within the district. What we have said is in full recognition of the legal proposition that the fund collected for the support and maintenance of the public free schools, to the extent that it is needed for that purpose cannot be diverted to any other purpose."

Opinion No. 0-1387 of this department holds that an independent school district may use any surplus fund in its local maintenance fund for the purpose of erecting a school building, and may issue its evidence of indebtedness in contemplation of current revenue; but whatever the form of said evidence of indebtedness the Board of Trustees is not authorized to create a deficiency debt against said fund for future years and the person advancing such money must look solely to the surplus funds accumulated for the year said obligation was created and not to the revenue of subsequent years, the time for payment not being controlling. A copy of this opinion is attached hereto and we refer you to the authorities cited therein.

In view of the foregoing, you are advised, in answer to your first question, that the San Angelo Independent School District has authority to purchase a building site for the San Angelo Junior College out of the general tax funds levied for the maintenance of the schools of the San Angelo Independent School District, provided the 20% limit allowed in Article 2815h, Section 7a is not exceeded, and provided further that such purchase is made by use of surplus funds and a deficiency debt is not thereby created against the district.

In considering your second question we direct your attention to the statutes heretofore set out, and in addition the following:

Article 2815h, Section 6, reads as follows:

"The location of the Junior College within the
Junior College District shall be determined by
the Junior College Board, as provided for in Sec-
tions herein.  The Junior College Board shall make
a selection of the location of the Junior College
after its establishment has been authorized as
provided in this Act."

The trustees of a school district may exercise their
discretion and best judgment in the selection of a site for
a school building.  Quoting from 37 Texas Jurisprudence, page
950:

"School trustees ordinarily have the exclusive
control and management of school property and ex-
clusive possession thereof in exercising this dis-
cretion they may locate and construct district
buildings upon such sites and in accordance with
such plans and specifications as in their judgment
may seem proper.  And in the absence of a showing
of corruption, fraud or bad faith their discretion
will not be reviewed."

In Davis vs. Hemphill, Texas Civil Appeals, 243 S.W.
691, it was held that the trustees of an independent school
district in determining that a new school site should be
selected and in purchasing same and providing for the erection
of a building thereon acted within their legal authority.

Even though the trustees seem to be vested with wide
discretion in the selection of a site for a school building,
we find no statute authorizing the trustee of either a com-
mon school district or an independent school district to pur-
chase land for a building site <u>outside</u> the school district.
The term "within the limits" of such districts is used in
Article 2802b, Section 2, providing for taxation for building
purposes in independent school districts including a large
city, and also in Article 2784, Section 2, authorizing trustees
of an independent school district to construct buildings.
Article 2802e, Section 1, Vernon's Annotated Texas Civil Stat-
utes which authorizes school districts to purchase buildings
and grounds for constructing gymnasia, stadia, or other re-
creational facilities provides for the purchase of such build-
ings or grounds "located within or without the district or
city".  Undoubtedly the Legislature realized that the best
site for the location of a stadium or similar recreational
facilities would probably be at a distance from the heavily
populated section of a city or school district and therefore

provided in this statute for same being located within or without the district.

Article 2815h, Section 6, heretofore set out, empowers the Junior College Board to determine the location of the Junior College within the Junior College District. We believe that the wording of this statute excludes any inference that the Board of Trustees has authority to purchase a site for a junior college building outside the school district. Your second question is therefore answered in the negative.

Trusting that the foregoing fully answers your inquiries, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By s/Cecil D. Redford
Cecil D. Redford
Assistant

CDR:ff:wc
Encl.

APPROVED MAY 15, 1942
s/Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

Approved Opinion Committee By s/BWB Chairman