IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DEPUTY

DIVISION II

| | |
|---|---|
| WILLIAM E. WALL, ESTATE OF JAMES H. JACK, by and through its Personal Representative, SHARON A. JACK and LINDA R. LEIBICH, | No. 46641-4-II |
| Appellants, | |
| v. | |
| THE STATE OF WASHINGTON, acting by and through the WASHINGTON STATE LEGISLATURE and JAMES McINTYRE, Treasurer of the State of Washington; BRIAN SONNTAG, Auditor of the State of Washington; and BRAD FLAHERTY, Director of the Department of Revenue, State of Washington, | UNPUBLISHED OPINION |
| Respondents. | |

LEE, J. —The estate of James Jack (the Estate) appeals the superior court's order granting summary judgment to the State of Washington, where the Estate challenged the constitutionality of legislative amendments to former RCW 83.100.230 that allowed the State to transfer funds out of the education legacy fund and into the state general fund during the 2007-2009 and 2009-2011 bienniums.[1] The Estate argued that the legislature's plenary power to enact the amendments was

---

[1] William Wall was the other plaintiff in this case; however, the superior court dismissed him as a party based on lack of standing. Wall does not appeal the superior court's order dismissing him for lack of standing.

limited by Wash. Const. art. VII, § 5[2] and art. II, § 19[3]. We hold that art. VII, § 5 does not apply, and the requisite criteria to show a violation of art. II, § 19 has not been shown. Consequently, the Estate has failed to show a constitutional limitation exists on the legislature's power to enact the challenged amendments. Because it is unable to show the legislation authorizing the discretionary transfer of money to the state general fund was unconstitutional, the Estate cannot establish the subsequent transfer of money from the education legacy fund to the state general fund was unconstitutional. Accordingly, we affirm.

## FACTS

In 2005, the legislature passed the "stand-alone" estate tax, former RCW 83.100.040 (2005). Former RCW 83.100.220 directed that estate taxes paid pursuant to former RCW 83.100.040 be deposited into the education legacy trust account. Under former RCW 83.100.230 (2005):

> The education legacy trust account is created in the state treasury. Money in the account may be spent only after appropriation. Expenditures from the account may be used only for deposit into the student achievement fund and for expanding access to higher education through funding for new enrollments and financial aid, and other educational improvement efforts.

Other funds are also deposited into the education legacy trust account. However, all of the funds in the account are comingled, and it is impossible to determine the source of the funds in the account.

---

[2] Art. VII, § 5 states, "No tax shall be levied except in pursuance of law; and every law imposing a tax shall state distinctly the object of the same to which only it shall be applied."

[3] Art. II, § 19 states, "No bill shall embrace more than one subject, and that shall be expressed in the title."

2

In an appropriations bill for the 2007-2009 biennium, the legislature amended former RCW 83.100.230 (2005) to add a section that stated: "During the 2007-2009 fiscal biennium, moneys in the account may also be transferred into the state general fund." LAWS OF 2008, ch. 329, § 924. On June 9, 2009, $67 million was transferred from the education legacy trust account to the state general fund. In an appropriations bill for the 2009-2011 biennium, the legislature amended former RCW 83.100.230 (2008), changing "2007-2009 fiscal biennium" to "2009-2011 fiscal biennium."[4],[5] LAWS OF 2010, 1st Spec. Sess., ch. 37, § 953. In 2012, the legislature amended former RCW 83.100.230 a third time as follows:

> The education legacy trust account is created in the state treasury. Money in the account may be spent only after appropriation. Expenditures from the account may be used only for ((deposit into the student achievement fund)) support of common schools, and for expanding access to higher education through funding for new enrollments and financial aid, and other educational improvement efforts. ((During the 2009-2011 fiscal biennium, money in the account may also be transferred into the state general fund.))

LAWS OF 2012, 1st Spec. Sess., ch. 10, § 7.

On May 31, 2011, the Estate paid $171,403 in estate taxes. On June 8, 2012, the Estate filed a complaint for declaratory judgment. The Estate alleged that the transfer of funds from the education legacy trust account into the state general fund was unconstitutional under art. VII, § 5. The Estate requested that the superior court issue an injunction preventing further diversion of funds out of the education legacy trust account. And, the Estate requested that the superior court

---

[4] The amendments to former RCW 83.10.230 in 2008 and 2010 were made in bills involving the state's operations budget. LAWS OF 2008, ch. 329, § 924; LAWS OF 2010, 1st Spec. Sess., ch. 37, § 953.

[5] From the record before this court, it does not appear that there was any transfer of funds resulting from the 2010 amendments.

3

order the legislature to restore the amount of money transferred out of the education legacy trust account into the general fund.

The State alleged several affirmative defenses including: (1) the Estate lacked standing, (2) the Estate's action was time barred, and (3) the Estate's action was moot. The State moved for summary judgment dismissal of the Estate's claims based on those affirmative defenses. The Estate filed a cross motion for summary judgment.

The superior court rejected the State's affirmative defenses.[6] However, the superior court granted the State's motion for summary judgment on the merits of the Estate's claims, denied the Estate's cross motion for summary judgment, and dismissed the Estate's complaint. The Estate filed a motion for direct review with our Supreme Court. Our Supreme Court transferred the Estate's appeal for consideration by this court.

## ANALYSIS

### A. STANDARD OF REVIEW

We review a superior court's order on summary judgment in a declaratory judgment action de novo. *Internet Cmty. & Entm't Corp. v. Wash. State Gambling Comm'n*, 169 Wn.2d 687, 691, 238 P.3d 1163 (2010). Summary judgment is appropriate if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. CR 56(c).

---

[6] The State argues that this court should not reach the merits of the Estate's constitutional arguments, but rather, affirm the superior court's order based on the threshold issues of standing, mootness, separation of powers, or statute of limitations. The State has not cross appealed the superior court's order denying their motion for summary judgment in part on these issues. Therefore, we do not address issues raised in the State's argument.

No. 46641-4-II

B.    LEGALITY OF THE TRANSFER OF FUNDS

"It is a fundamental principle of our system of government that the legislature has plenary power to enact laws, except as limited by our state and federal constitutions." *Wash. State Farm Bureau Fed'n v. Gregoire*, 162 Wn.2d 284, 290, 174 P.3d 1142 (2007). The Estate claims art. VII, § 5 and art. II, § 19 of the Washington State Constitution precluded the legislature's 2008 and 2010 amendments to former RCW 83.100.230, and therefore, the amendments were invalid. Because art. VII, § 5 does not apply and art. II, § 19 does not invalidate the amendment, we hold that the Estate's constitutional challenge fails.

1.    Art. VII, § 5 Does Not Apply

The Estate argues that the amendment to former RCW 83.100.230 authorizing the transfer of money from the Education Legacy Trust Account to the general fund violates art. VII, § 5. However, that provision restricts the legislature's power to impose a tax, not the legislature's plenary power to spend. Therefore, we hold that art. VII, § 5 does not apply.[7]

Art. VII, § 5 of the Washington Constitution states:

No tax shall be levied except in pursuance of law; and every law imposing a tax shall state distinctly the object of the same to which only it shall be applied.

This court interprets constitutional provisions to "give effect to the manifest purpose for which it was adopted." *Westerman v. Cary*, 125 Wn.2d 277, 288, 892 P.2d 1067 (1994). This court looks first to the plain language of the text and gives the plain language its common and ordinary

---

[7] The State argues that art. VII, § 5 does not apply to the legislation the Estate challenges because art. VII, § 5 applies exclusively to property taxes and not estate taxes. However, as discussed below, art. VII, § 5 does not apply because the Estate is not challenging the imposition of an estate tax. Therefore, we do not address whether that provision would apply to the imposition of an estate tax.

5

meaning. *Wash. Water Jet Workers Ass'n v. Yarbrough*, 151 Wn.2d 470, 477, 90 P.3d 42 (2004), cert. denied, 543 U.S. 1120 (2005). Here, the plain language of art. VII, § 5 clearly demonstrates that it applies only to legislation *establishing* taxes; it does not apply to legislation authorizing legislative spending.

Art. VII, § 5 contains two restrictions on the legislature's ability to tax. First, it requires that any tax be levied pursuant to law. Art. VII, § 5. Second, it requires every law *imposing* a tax to "state distinctly the object of the same to which only it shall be applied." Art. VII, § 5. Here, the Estate does not challenge a law *imposing* a tax, it is challenging a law that *transfers* tax money. The plain language of art. VII, § 5 does not restrict the legislature's plenary power to transfer money. Accordingly, art. VII, § 5 is inapplicable.

The cases the Estate cites to support its argument that the amendments to former RCW 83.100.230 violated art. VII, § 5 do not contradict the plain language interpretation of art. VII, § 5. In *Sheehan v. Cent. Puget Sound Reg'l Transit Auth.*, 155 Wn.2d 790, 123 P.3d 88 (2005), the plaintiffs directly challenged the motor vehicle excise tax. The *Sheehan* court articulated that the issue was whether the taxes imposed were unconstitutional, not whether the legislature validly authorized spending the tax money. *Id.* at 796. *Burbank Irr. Dist. No. 4 v. Douglass*, 143 Wash. 385, 396, 255 P. 360 (1927), does to some extent, address the diversion of funds from a money payable out of a special account. However, the case does not address art. VII, § 5. Instead, it addresses whether the county was properly paying warrants pursuant to the requirements of the

6

irrigation code. *Id.* at 395-96.[8] Similarly, *State ex rel. State Bd. for Vocational Educ. v. Yelle*, 199 Wash. 312, 91 P.2d 573 (1939) addressed appropriations from the common school fund required by art. IX of the Washington Constitution. *Id.* at 315-16. It does not establish a constitutional cause of action challenging legislative transfers under art. VII, § 5. *Id.*

The Estate's reliance on *Sheldon v. Purdy*, 17 Wash. 135, 49 P. 228 (1897), is also misplaced. *Sheldon* was an action in which the plaintiff asked the court for a writ of mandamus ordering the county treasurer to pay coupons due upon bonds issued by the school district. *Id.* The money that the plaintiffs alleged the school district had used to pay the coupons was money from the "common-school fund" created by art. IX of the constitution. *Id.* at 138-39. The court held that, to the extent that the law required the County treasurer to divert money from the constitutionally created "common-school fund," the law would be unconstitutional. *Id.* at 141-42. However, *Sheldon* does not create a cause of action under art. VII, § 5 for a taxpayer to challenge the use of money authorized by the legislature in a statutorily created fund.

The Estate has not cited any case since *Sheldon* was decided in 1897 for the proposition that art. VII, § 5 restricts the legislature's plenary authority to spend or supports a cause of action challenging the legislature's transfer of funds between accounts. "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962). Thus, regardless of whether art. VII, § 5 applies to estate taxes or

---

[8] The "real question" in the case was framed as: "shall warrants for operating expenses be paid in the order of their registration, regardless of the year in which they were issued, or shall such warrants when issued constitute a first claim on the expense fund for that year?" *Burbank Irr. Dist. No. 4*, 143 Wash. at 390.

whether it applies exclusively to property taxes, the Estate is not challenging the imposition of an estate tax, and it has not provided any authority supporting the contention that art. VII, § 5 applies to amendments authorizing the transfer of funds between accounts.

2. Constitutionality Under Art. II, § 19

The Estate also alleges that the amendments to former RCW 83.100.230 violate art. II, § 19 of the Washington Constitution. We disagree.

Art. II, § 19 states that "No bill shall embrace more than one subject, and that shall be expressed in the title." Two specific rules are embodied in art. II, § 19: (1) the subject in title rule and (2) the single subject rule.

a.      Subject in Title Rule

Under the subject in title requirement of art. II, § 19, the subject of the bill must be adequately expressed in its title. *Wash. State Grange v. Locke*, 153 Wn.2d 475, 497, 105 P.3d 9 (2005). The purpose of this requirement is to guarantee notice of the subject matter of the bill. *Id.* at 491. "To be constitutionally adequate, a title need not be 'an index to the contents [of the bill], nor must it provide details of the measure.'" *Id.* at 497 (quoting *Amalgamated Transit Union Local 587 v. State*, 142 Wn.2d 183, 217, 11 P.3d 762, 27 P.3d 608 (2000)). The title of the bill need only provide sufficient notice to inform voters and legislators of the subject matter of the bill. *Id.* "The title satisfies the subject in title requirement 'if it gives notice that would lead to an inquiry into the body of the act, or indicate to an inquiring mind the scope and purpose of the law.'" *Id.* (quoting *Young Men's Christian Ass'n v. State*, 62 Wn.2d 504, 506, 383 P.2d 497 (1963)).

While the Estate challenges the amendments to former RCW 83.100.230 as violating art. II, § 19, the Estate fails to meaningfully distinguish between its allegation that the bills in question violated the subject in title rule and its allegation that the bills violated the single subject rule. However, to the extent that the Estate attempts to argue that the bills violate the subject in title rule, the Estate is mistaken.

Here, the title of the bills read, "OPERATING BUDGET—SUPPLEMENTAL APPROPRIATIONS AN ACT Relating to fiscal matters; amending RCW . . . 83.100.230" and SUPPLEMENTAL OPERATING BUDGET AN ACT Relating to fiscal matters; amending RCW . . . 83.100.230." LAWS OF 2008, ch. 329 pmbl.; LAWS OF 2010, 1st Spec. Sess., ch. 37. Thus, the title of the bills specifically reference amending former RCW 83.100.230. The specific reference to former RCW 83.100.230 in both bills provides notice to an inquiring mind that some change related to the funds in the education legacy trust account is being made in the bills. Therefore, the subject in title bill requirement in art. II, § 19 is met.

b.      Single Subject Rule

Art. II, § 19 serves the purpose of preventing "the practice of combining two bills, neither of which would pass on its own, but when the proponents of the measures combine their interests both can be enacted," and preventing "the attachment of an unpopular bill to a popular one on an unrelated subject in order to guarantee the passage of the unpopular provision." *Wash. State Grange*, 153 Wn.2d at 491. The Estate's primary complaint is that, by inserting an amendment to former RCW 83.100.230 in appropriations bills, the legislature made a substantive change in the

law through an administrative appropriations bill. This argument goes toward whether the bills violate the single subject rule, not whether the bills violate the subject in title rule.

Although the Estate provides examples of circumstances in which the courts have declared bills amending substantive law in an appropriations bill as unconstitutional, the Estate fails to apply our Supreme Court's criteria to determine whether a section of a bill is amending substantive law. Applying such criteria demonstrates that the amendment to former RCW 83.100.230 is not a substantive change in the law.

Our Supreme Court has provided three non-exclusive factors to consider when determining whether a section of a bill is truly substantive in nature:

> We decline to adopt a categorical definition of "substantive law," but where the policy set forth in the budget has been treated in a separate substantive bill, its duration extends beyond the two-year time period of the budget, or the policy defines rights or eligibility for services, such factors may certainly indicate substantive law is present.

*Wash. State Legislature v. State*, 139 Wn.2d 129, 147, 985 P.2d 353 (1999). Here, not a single criteria articulated by our Supreme Court applies to the amendments to former RCW 83.100.230.

First, former RCW 83.100.230 was originally the product of the Revenue and Taxation bill. LAWS OF 2005, ch. 514, § 1101. Since its creation in 2005, former RCW 83.100.230 has been amended four times: LAWS OF 2008, ch. 329, § 924; LAWS OF 2010, 1st Spec. Sess., ch. 37, § 953; LAWS OF 2012, ch. 10, § 7; and LAWS of 2015, 3rd Spec. Sess., ch. 4, § 977. All the amendments to former RCW 83.100.230 have come in budgeting or funding bills. Former RCW 83.100.230 has never been treated in a separate substantive bill. Second, both the 2008 and 2010 amendments to former RCW 83.100.230 were limited to the biennium for which the operating budget was being created. Therefore, the amendments did not last past the two year time period of the budget

biennium. Third, the amendments to former RCW 83.100.230 do not define any rights or eligibility for services, and former RCW 83.100.230 has never defined any rights or eligibility for services.

The Estate relies on *Flanders v. Morris*, 88 Wn.2d 183, 558 P.2d 769 (1977), to support its challenge. Like the legislation in *Washington State Legislature*, the provision at issue in *Flanders* involved age requirements for public assistance. *Id.* at 186. In *Flanders*, the court specifically noted that there had been two prior attempts to introduce age requirements for public assistance; however, when presented in separate substantive bills, the bills failed to pass both times. *Id.* at 187. The *Flanders* court recognized that the legislature had used an appropriations bill to pass a law that could not pass on its own merits, which was exactly what art. II, § 19 was meant to prevent. *Id.*

Here, there is nothing before this court that indicates the amendments to former RCW 83.100.230 had been introduced in separate bills prior to the legislature passing the amended bill. Accordingly, outside the Estate's bald assertions, there is no evidence establishing that the legislature abused an appropriations bill in the same manner as the court disapproved of in *Flanders.*

Finally, the Estate relies on *Washington Toll Bridge Authority v. Yelle*, 54 Wn.2d 545, 342 P.2d 588 (1959). In *Washington Toll Bridge Authority*, the court held that a provision regarding the funding of bonds included in an appropriations bill violated art. II, § 19. 54 Wn.2d at 550. The court determined that the provisions violated art. II, § 19 because the provision was of a "general and continuing nature," rather than being temporary in nature. *Id.* at 551. Moreover, the provision restricted the power of the Toll Bridge Authority, while at the same time vesting new

11

powers in the State Highway Commission. *Id.* at 551-53. Here, the amendments to former RCW 83.100.230 are not "general and continuing." *Id.* at 551. They are limited to the specific fiscal biennium for which the appropriations were passed. And, the amendments do not restrict current powers in an agency, nor do they create or vest new powers.

In sum, the Estate fails to show, based on the Supreme Court's explicit criteria, that the amendments to former RCW 83.100.230 constitute a substantive change in the law. And, the cases to which the Estate cites do not provide any support for the contention that the 2008 and 2010 amendments to former RCW 83.100.230 should be considered substantive. Instead, the cases on which the Estate relies apply the same criteria for determining whether a provision is a substantive change in the law as were set out in *Washington State Legislature*, 139 Wn.2d 129. Because the amendments to former RCW 83.100.230 do not meet any of the criteria, there is no basis for concluding that they were substantive changes to the law improperly inserted into the amendments.

## CONCLUSION

We hold that art. VII, § 5 does not apply, and the requisite criteria to show a violation of art. II, § 19 has not been shown. Consequently, the Estate fails to show a constitutional limitation exists on the legislature's power to enact the challenged amendments. Because it is unable to show the legislation authorizing the transfer of funds to the state general fund was unconstitutional, the Estate cannot claim the subsequent transfer of money to the state general fund was unconstitutional.

No. 46641-4-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Maxa, P.J.

_____
Melnick, J.