[No. 33799.   *En Banc.*   December 5, 1956.]

THE STATE OF WASHINGTON, *on the Relation of Don Eastvold, as Attorney General, Relator,* v. CHARLES R. MAYBURY, *as State Treasurer, et al, Respondents.*[1]

*The Attorney General* and *Clyde A. Barnard, Assistant,* for relator.

*Preston, Thorgrimson & Horowitz, Special Assistant Attorneys General,* for respondents.

WEAVER, J.—This action challenges the validity of a specific section of a resolution adopted by the state capitol committee authorizing a bond issue.

[1] Reported in 304 P. (2d) 663.

The state capitol committee is composed of the governor, the state auditor, and the commissioner of public lands, *ex officio.* RCW 43.34.010.

RCW 43.34.060 provides:

"All revenues received from leases and sales of lands, timber, and other products on the surface or beneath the surface of the lands granted to the state by the United States pursuant to an act of congress approved February 22, 1889, for capitol building purposes, shall be paid into the *capitol building construction fund.*" (Italics ours.)

Laws of 1951, chapter 22, p. 43 (uncodified), as amended by Laws of 1953, chapter 187, p. 398 (uncodified), authorized the state capitol committee to construct a state office building and to issue bonds payable from the *capitol building bond redemption fund,* in accordance with the terms of the statute.

In 1955, the legislature authorized a bond issue, not to exceed $4,300,000. Laws of 1955, chapter 279, p. 1224; RCW 79.24.200. With the proceeds of the bond issue, the state capitol committee was authorized to (a) refund any of the bonds outstanding by authority of the Laws of 1951, chapter 22, as amended (RCW 79.24.220); (b) construct a new state office building; (c) build a new state library building; and (d) clear Capitol Lake of pilings and debris (RCW 79.24-.260).

The statute provides that the capitol building bond redemption fund receives its moneys in the following manner:

"Sec. 5. . . . While any of said bonds remain outstanding and unpaid, it shall be the duty of the capitol committee in December of each year to determine the amount that will be required for the redemption of bonds and the payment of interest during the twelve month period of the next calendar year, and certify said amount to the state treasurer in writing. The state treasurer shall forthwith and thereafter during said twelve month period deposit into the capitol building bond redemption fund all receipts that would otherwise be deposited in the capitol building construction fund *until the amount certified to said treasurer by the said capitol committee has accrued to the capitol building bond redemption fund.*" Laws of 1955, chapter 279, § 5, p. 1226; RCW 79.24.240. (Italics ours.)

The following appears from the record before us:

The state employees' retirement system (RCW 41.40.020 et seq.) is the owner of bonds, totaling $2,800,000, issued by the state capitol committee.

January 9, 1956, the board of the state employees' retirement system expressed its willingness to the state capitol committee to purchase, up to a maximum of $4,300,000, the new issue of bonds authorized by the 1955 legislature (RCW 79.24.200); provided, there be a covenant in the bond indenture for a reserve amount of two years' principal and interest payments, *in addition* to the amount required for the bond redemption fund as provided by statute.

May 21, 1956, three things happened. We set them forth chronologically.

First: The state capitol committee offered to sell to the state employees' retirement system capitol building bonds in the amount of $4,300,000. From this principal, $2,800,000 will be used to retire bonds already issued to and held by the system.

Second: The minutes of a meeting of the board of the state employees' retirement system disclosed that counsel

" . . . read a portion of the resolution which *he will recommend the State Capitol Committee adopt at its meeting scheduled for 2:30 p. m., May 21, 1956.* He pointed out that the text of the resolution presented to the Retirement Board for its consideration, conformed to the proposed action to be taken by the State Capitol Committee." (Italics ours.)

The board then, by resolution, accepted the offer to purchase the bonds;

"Provided, however,

"(1) That the State Capitol Committee must legally covenant in its bond resolution that it will set aside and pay into the Capitol Building Bond Redemption Fund created for the payment of the principal of and interest on such bonds, in addition to the annual amounts required for the payment of the principal of and interest on said bonds, the sum of at least $120,000 per calendar year in each of the years 1957 through 1961 until the additional sum of $600,000 shall have been paid into said Fund, which sum shall be held to secure the payment of the principal of and

interest on such bonds and to be used to make up any deficiency that may occur in the annual amounts required to be paid into said Bond Redemption Fund for the payment of such principal and interest . . ."

Third: The state capitol committee then adopted a resolution which provided for the issuance of bonds in the sum of $4,300,000 as authorized by the 1955 legislature and set forth the date, terms, form, maturities, and covenants to be contained therein and provided

" . . . for the payment into the capitol building bond redemption fund created by said chapter 279 of certain reserve moneys, and confirming the sale of said bonds."

Section 4 of the resolution is, substantially, in the language of Laws of 1955, chapter 279, § 5 (quoted *supra*). It provides that each year the state treasurer shall deposit into the capitol building bond redemption fund all receipts that would otherwise be deposited in the capitol building construction fund, until the total equals the amount, certified annually to the treasurer by the state capitol committee, necessary to pay interest and redeem bonds during the ensuing twelve calendar months.

The present action arises from § 5 of the resolution adopted by the state capitol committee on May 21, 1956. It reads as follows:

"Sec. 5. *In addition* to the payments required to be made into said Bond Redemption Fund by Section 4 of this resolution, the State Capitol Committee *further covenants and agrees, on behalf of the State of Washington,* that it will also set aside and pay into said Bond Redemption Fund out of all of the receipts and revenues hereafter received from leases and contracts of sale heretofore or hereafter made of lands, timber, and other products from the surface or beneath the surface of the lands granted to the State by the United States pursuant to the Act of Congress approved February 22, 1889 for capitol building purposes, *immediately* after the payments required by Section 4 hereof have been paid into said Bond Redemption Fund, the sum of at least $120,000 per calendar year in each of the years 1957 through 1961 until the sum of $600,000 shall have been paid into said Fund. The State Treasurer is hereby authorized and directed to set aside such amounts each such year from such

receipts and revenues of the State Capitol Committee and to credit the same to or pay the same into said Bond Redemption Fund.

"Said $600,000 or any part thereof in said Fund are hereby designated as reserve moneys, and the State Capitol Committee agrees, when said sum of $600,000 has been paid into such Bond Redemption Fund, that it will at all times maintain that amount therein until there is a sufficient amount in such Bond Redemption Fund to redeem and retire all of the bonds authorized herein outstanding with interest due to such date of redemption.

"Any interest earned by the investment of these reserve moneys or any part thereof shall be credited to such Bond Redemption Fund.

"Said amounts so pledged to be paid into such Bond Redemption Fund as such reserve moneys, including any amounts that may have to be paid to make up any deficiency in said $600,000 amount by virtue of part or all of the same having to be used to pay the interest on or principal of and interest on any of the bonds authorized herein, *are hereby declared to be a prior claim and charge* upon such receipts and revenues of the State Capitol Committee hereafter to be received from all such contracts of sale and leases heretofore or hereafter made, *superior to all other claims or charges* of any kind or nature except the claim or charge upon such receipts and revenues for the annual payments required by Section 4 hereof to be made into such Bond Redemption Fund for the payment of the principal of and interest on the bonds authorized herein." (Italics ours.)

The subject matter of § 5 of the bond resolution (quoted *supra*) does not appear in the statute authorizing the issuance of bonds.

The state of Washington (relator), upon the relation of the attorney general, caused an alternative writ of mandate to be issued, whereby the state treasurer (respondent) is directed to refrain from setting aside and paying into the capitol building bond redemption fund (created by Laws of 1955, chapter 279, § 5) out of the proceeds received from lands granted to the state for capitol building purposes, the sum of at least $120,000 in each of the years 1957 through 1961, until the total of $600,000 is paid into that fund, or any other moneys whatsoever, except the amounts au-

thorized by Laws of 1955, chapter 279, § 5. The state capitol committee (respondent) is also directed to refrain from issuing and selling said bonds, with a covenant that the payment of principal and interest thereon is additionally secured by payment into the bond redemption fund of the reserve moneys, authorized by § 5 (quoted *supra*) of the resolution adopted by the state capitol committee on May 21, 1956. The respondents were directed to show cause, on a certain date, why they should not be so restrained.

The parties are agreed that the state capitol committee is an administrative agency created by statute; that it has only those powers expressly given to it by statute or necessarily implied therefrom. *Northern Pac. R. Co. v. Denney,* 155 Wash. 544, 546, 285 Pac. 452 (1930). The committee has no common-law or inherent powers.

Section 5 of the bond resolution provides for two things: (a) it *withholds* from the capitol building construction fund an *additional* $120,000 a year for five years, and such further sums as may be necessary to maintain the $600,000 reserve while any bonds are outstanding; and (b) it makes the maintenance of the additional reserve fund a "prior claim and charge . . . superior to all other claims or charges" (except for the claim established by § 4 of the resolution) against the funds which normally would be deposited in the capitol building construction fund.

The crux of the problem is: May the power to adopt § 5 of the bond resolution (quoted *supra*) be implied from the statute? (Laws of 1955, chapter 279).

Respondents contend that the Laws of 1955, chapter 279, establish a legislative intent that the funds, to accomplish the purpose announced, be raised by the *sale* of the bonds authorized; that the covenant for the additional reserve fund is necessary *"to enable the bonds to be sold* and to provide the funds for the purposes set forth in said act."

In support of their thesis, respondents present, as a part of the agreed statement of facts, the affidavits of three investment bankers, who state that they "would not consider submitting a bid for the bonds" unless the bond resolution contains the covenant for the additional $600,000 reserve

fund. These affidavits were made *after* issuance of the alternative writ of mandate in this action.

The parties have agreed

"That the covenants set forth in Sections 5 and 6 of said bond resolution of the State Capitol Committee . . . were necessary in order to enable the State Capitol Committee to sell such bonds; . . ."

(Parenthetically, we note that the record does not disclose any effort made to market the bonds except the negotiations we have described with the state employees' retirement board.)

Under the facts of this case, it is a *non sequitur* to say that an implied power to create an additional reserve fund arises from either the marketability or nonmarketability of the bonds. It is one thing to interpret the language of a statute to carry out the manifest intent of the legislature (in which category respondents' authorities fall), and an entirely different matter to add, by implication, to a statute which is complete in itself, simply because the result intended by the legislature may be doubtful in the minds of certain individuals.

Although the facts are not necessarily apropos, the language of this court in *State ex rel. State Board of Medical Examiners v. Clausen*, 84 Wash. 279, 282, 146 Pac. 630 (1915), is pertinent:

"But where a person or board is charged by law with a specific duty, *and the means for its performance are appointed by law*, there is no room for implied powers, and the means appointed must be followed, *however inadequate may be the result*." (Italics ours.)

The statute is not silent as to the manner of redeeming the bonds. The legislature created the capitol bond redemption fund and designated the manner and method of depositing money to the fund; it did not create a reserve fund. It is the province of the legislature, not of the state capitol committee, to control those funds which normally would be paid into the capitol building construction fund, over and above the moneys required by the Laws of 1955, chapter 279, § 5. If the statute, as written, produces a result

which is thought to be inadequate (upon which we express no opinion), the remedy is with the legislature and not the state capitol committee or the judiciary.

The alternative writ of mandate, heretofore issued, should be made permanent.

It is so ordered.

DONWORTH, C. J., SCHWELLENBACH, HILL, FINLEY, ROSELLINI, and OTT, JJ., concur.

MALLERY, J., dissents.