[No. 44269. En Banc. January 7, 1977.]

LOIS FLANDERS, *Petitioner*, v. CHARLES MORRIS, *as Secretary of the Department of Social and Health Services*, ET AL, *Respondents.*

*Norman R. McNulty, Jr.,* and *J. Dinnen Cleary* of *Spokane County Legal Services,* for petitioner.

*Slade Gorton, Attorney General,* and *Walter E. White, Assistant,* for respondents.

HUNTER, J.—Lois Flanders, petitioner in this original mandamus action, is 28 years old, unemployed, and in need. Therefore she is entitled to public assistance under the codified public assistance laws of this state: RCW 74.08.025; 74.04.005(6),(13); and 74.08.040. However, the supplemental appropriations bill for the 1975–77 biennium, House Bill No. 1624 (Laws of 1975, 2d Ex. Sess., ch. 133, p. 472) contains a provision which limits general, noncontinuing public assistance to persons who, if single, are at least 50 years old. Under this law, she is ineligible for assistance.

Petitioner previously moved this court for a stay, preventing implementation of that provision (section 17, subsection 10, House Bill No. 1624), which motion was granted

pending determination of whether the provision is an unconstitutional enactment under this state's constitution. The two constitutional provisions upon which this legislation is challenged are Const. art. 2, § 19, and Const. art. 2, § 37. Const. art. 2, § 19 provides that "No bill shall embrace more than one subject, and that shall be expressed in the title." Const. art. 2, § 37 provides that "No act shall ever be revised or amended by mere reference to its title, but the act revised or the section amended shall be set forth at full length."

Petitioner contends that the action of the legislature in this instance, that of including in a budget bill a new limitation on public assistance eligibility, is offensive to both these provisions of our constitution. Petitioner argues that section 17, subsection 10 of House Bill No. 1624, is legislation of a substantive nature, amendatory of existing public assistance law, ahd as such was improperly enacted. The legislature should be required to pass a separate act, which would be codified as 'an amendment to existing law. Petitioner argues that although the legislature has the power to authorize expenditures in an appropriations bill, and customarily does place limitations on the expenditure of public monies under the title of the appropriations bill, such a title is not sufficient to encompass conditions which amount to substantive changes in the law.

The title of House Bill No. 1624 is as follows:

AN ACT Relating to expenditures by state agencies and offices of the state; making appropriations for the fiscal biennium beginning July 1, 1975 and ending June 30, 1977 . . .

Section 17, subsection 10 of that bill, challenged by petitioner, provides in pertinent part:

General assistance for unemployed, employable persons may be provided in accordance with eligibility requirements and standards established by the department to an applicant who:

(a) Meets the eligibility requirements of RCW 74.08-.025; and

(b) Is a resident of the State of Washington; and

(c) Is either:
(i) A single person who is fifty years of age or over; or
(ii) A married couple . . .

Tracing the history of the above quoted provision, we find that it epitomizes the very type of legislation that the two cited constitutional provisions were designed to protect against. We refer to two previous attempts unsuccessfully made to create such an age limitation on public assistance.

First, the Department of Social and Health Services promulgated a regulation. It was struck down by this court as in excess of the agency's administrative authority and in conflict with existing statutes. *Fecht v. Department of Social & Health Servs.*, 86 Wn.2d 109, 542 P.2d 780 (1975). Subsequent to *Fecht*, Senate Bill No. 3278 attempted to enact the same limitation under the title:

> AN ACT Relating to public assistance; and adding new sections to chapter 26, Laws of 1959, and to chapter 74.08, RCW.

The bill was twice voted down in House Committee, and therefore never enacted.

Thus, a law which could not pass on its own merit, under a proper title, became law by being slipped into a 45–page appropriations bill. Aside from the problem of whether legislators were properly put on notice by the title that such a provision was contained within, there is the additional problem that even if they were, they would feel somewhat constrained to reject that single provision. Frequently the appropriations bill is the result of a free conference committee. As such it must be voted on in its entirety and cannot be amended. See Rule 12, 1975 Joint Rules of the Senate and House of Representatives. It is obvious why a legislator would hesitate to hold up the funding of the entire state government in order to prevent the enactment of a certain provision, even though he would have voted against it if it had been presented as independent legislation.

■ Article 2, section 19 of our state constitution has a dual purpose: (1) to prevent "logrolling", or pushing legislation through by attaching it to other necessary or desirable legislation, and (2) to assure that the members of the legislature and the public are generally aware of what is contained in proposed new laws. In *State ex rel. Washington Toll Bridge Authority v. Yelle,* 54 Wn.2d 545, 550–51, 342 P.2d 588 (1959), we quoted language which explains the need for this constitutional provision:

> ". . . there had crept into our system of legislation a practice of engrafting upon measures of great public importance foreign matters for local or selfish purposes, and the members of the legislature were often constrained to vote for such foreign provisions to avoid jeopardizing the main subject or to secure new strength for it, whereas *if these provisions had been offered as independent measures they would not have received such support. . . ." Neuenschwander v. Washington Suburban Sanitary Comm,* (1946), 48 A. (2d) 593, 598, 599.
>
> Without the protection created by the constitutional requirement . . . appropriation bills would be peculiarly vulnerable to this legislative evil.

(Italics ours.)

■ In this 1959 *Toll Bridge* case we held that the inclusion in an appropriations act of a provision authorizing the State Highway Commission to annually divert proceeds from a certain excise tax to the Toll Bridge Authority was violative of both article 2, section 19, and article 2, section 37, of our state constitution. We reasoned that the provision was an amendment to existing law, and also that it was legislation of a general and continuing nature lasting beyond the biennium, which went beyond limiting disbursements or qualifying the appropriations. We found it to be a substantive enactment which did not constitutionally belong in an appropriations bill, going on to define such a bill as follows, quoting from *State ex rel. Blakeslee v. Clausen,* 85 Wash. 260, 272, 148 P. 28 (1915):

> ". . . An appropriation bill is not a law in its ordinary sense. It is not a rule of action. It has no moral or divine

sanction. It defines no rights and punishes no wrongs. It is purely *lex scripta*. It is a means only to the enforcement of law, the maintenance of good order, and the life of the state government. Such bills pertain only to the administrative functions of government. . . ."

*State ex rel. Washington Toll Bridge Authority v. Yelle,* 54 Wn.2d 545, 551, 342 P.2d 588 (1959).

An appropriations bill which "defines no rights" certainly cannot abolish or amend existing law. It cannot add restrictions to public assistance eligibility and still be said to define no rights. The proper legislative procedure is to enact separate, independent, properly titled legislation.

 Clearly, greater latitude must be granted the legislature in enacting multi–subject legislation under the appropriations bill title than any other, since the purpose of appropriations bills is to allocate monies for the State's multitudinous and disparate needs. The fact that many states exempt appropriations bills from the subject–title restriction in their constitutions makes clear the difficulty involved in conforming such legislation to the requirement and still getting the job done. *See generally* 1A C. Sands, *Statutes and Statutory Construction* § 17.01 (4th ed. 1972). We have frequently stated that a title need not be an index to the contents of a bill. Where the title to any act expresses a single general subject or purpose, all matters which are naturally and reasonably connected with it, or any measures which will further its purpose, will be held to be germane. *State ex rel. Washington Toll Bridge Authority v. Yelle,* 32 Wn.2d 13, 200 P.2d 467 (1948); *Gruen v. State Tax Comm'n,* 35 Wn.2d 1, 211 P.2d 651 (1949); *Water Dist. 105 v. State,* 79 Wn.2d 337, 485 P.2d 66 (1971).

However, even construing the title and subject of this appropriations bill most liberally, the provision must be found to be in violation of article 2, section 19, of our state constitution. The title is not sufficiently broad to apprise the public of an uncodified change in the substantive law. Neither can such an amendment to the public assistance laws be said to be germane to the subject.

■ We next deal with the constitutional challenge made under Const. art. 2, § 37. The reason for requiring amendatory legislation to set out the statute in full was stated in the 1959 *Washington Toll Bridge Authority* case, quoting from *State ex rel. Gebhardt v. Superior Court,* 15 Wn.2d 673, 685, 131 P.2d 943, 949 (1942):

"The section of our constitution above referred to was undoubtedly framed for the purpose of avoiding confusion, ambiguity, and uncertainty in the statutory law through the existence of separate and disconnected legislative provisions, original and amendatory, scattered through different volumes or different portions of the same volume. Such a provision, among other things, forbids amending a statute simply by striking out or inserting certain words, phrases, or clauses, a proceeding formerly common, through which laws became complicated and their real meaning often difficult of ascertainment. The result desired by such a provision is to have in a section as amended a complete section, so that no further search will be required to determine the provisions of such section as amended."

*State ex rel. Washington Toll Bridge Authority v. Yelle, supra* at 553–54. Another important purpose of Const. art. 2, § 37, not mentioned above, is the necessity of insuring that legislators are aware of the nature and content of the law which is being amended and the effect of the amendment upon it. 1A C. Sands, *Statutes and Statutory Construction* § 22.16 (4th ed. 1972).

■■ For 37 years, the statutory law of this state has provided for public assistance on the basis of need with no age restriction. The new restriction is clearly an amendment to RCW 74.04.005, adding to the restrictions already enumerated there. However, the statute will never reflect this change but will continue to read as it always has, with no age restriction. One seeking the law on the subject would have to know one must look under an "appropriations" title in the *uncodified* session laws to find the amendment. The fact that the budget bill is not codified strikes at the very heart and purpose of Const. art. 2, § 37.

Respondent, the Department of Social and Health Services, argues that since budget bills are only for a 2–year duration, and not ongoing, the change in the law does not amount to an amendment. Although our decision in the 1959 *Toll Bridge Authority* case turned on the reasoning that the offensive provision was ongoing and therefore a substantive amendment, it is not necessary that a given provision have effect in perpetuity (as there) to be stricken from an appropriations bill as substantive, amendatory law. We believe it most logical to assume that if this provision were allowed to stand, it would extend beyond this budget bill's biennium and be reenacted in future budget bills. However, even if that were not so, the provision amends the statute on the subject and must be codified as an amendment in conformance with our constitution. Nowhere do we find authority for the contention that amendments are only such changes in the law as continue beyond a 2–year period. Hence we hold the enactment to be violative of Const. art. 2, § 37.

Respondents, in defending this enactment, rely on *State ex rel. Jones v. Clausen,* 78 Wash. 103, 138 P. 653 (1914). In *Jones* the legislature's long standing practice of raising state officers' salaries (already fixed by general law and codified) in appropriations bills was challenged under the same constitutional provisions as here. We upheld the "settled practice of the legislature" to do so, basing our decision on the reasoning that it was "custom", that appropriations acts are general laws, and "[i]f they do not offend against the constitution, and are found to be in irreconcilable conflict with a permanent act, the latter will be held to be suspended or repealed during the time the appropriation bill is in force." *State ex rel. Jones v. Clausen, supra* at 112.

We no longer subscribe to those views expressed in *Jones,* hence we must overrule it. Appropriations bills exist simply for the purpose of implementing general laws. As such, we hold that the general law cannot be suspended by provisions in appropriations bills which are in conflict.

We recognize here, as in *Jones,* a custom on the part of the legislature. There are many examples of substantive public assistance legislation in appropriations bills, included as limitations on the expenditures of monies appropriated. There are other provisions in the very appropriations bill before us which the Governor criticized as substantive legislation improperly enacted. The following is an excerpt from the Governor's letter to the House of Representatives, upon signing House Bill No. 1624:

> I take this opportunity also to point out my concern over the recent trend by legislative drafters of incorporating substantive legislation into budget bills. One example of such drafting is found in Section 17, subsection (6), which relates to accounting procedures on claims by public assistance vendors, and another in subsection (7), which deals with average lengths of stay of persons receiving aid under the medical assistance program. I believe that provisions such as these involve policy considerations that should be dealt with by the Legislature in separate bills, rather than inserting them into budget bills, where substantive changes in policy will not receive adequate study and consideration, and where they tend to create confusion for the appropriation provisions of the budget bill. While I am not vetoing these and other similar items, I strongly urge the Legislature to put an end to this kind of drafting.

We realize that in certain instances the legislature must place conditions and limitations on the expenditures of monies, but to the extent that such conditions or limitations have the effect of modifying or amending the general law they are unconstitutional enactments. An appropriations bill may not constitutionally be used for the enactment of substantive law which is in conflict with the general law as codified. Hence, we declare the challenged provision a nullity.

The writ shall issue, directing the Department of Social and Health Services to pay petitioner the public assistance

to which she is entitled under the codified laws of this state.

STAFFORD, C.J., and ROSELLINI, HAMILTON, WRIGHT, UTTER, BRACHTENBACH, HOROWITZ, and DOLLIVER, JJ., concur.