[No. 46978.   En Banc.   October 2, 1980.]

LOREN S. McGOVERN, ET AL, *Respondents,* v. THE
DEPARTMENT OF SOCIAL AND HEALTH SERVICES,
ET AL, *Appellants.*

*Slade Gorton, Attorney General, Richard A. Mattsen, Senior Assistant,* and *Kathleen D. Mix, Assistant,* for appellants.

*Ditlevson, Rodgers & Hanson,* by *G. Saxon Rodgers,* for respondents.

DOLLIVER, J.—In 1953, Cedar Creek Youth Camp in Thurston County began operation and served as a youth camp until August 30, 1979. In July of 1979, the Department of Social and Health Services (DSHS) made an administrative decision to convert it to an adult facility. The decision was based on the decrease in juvenile population and the overcrowding in all adult facilities, particularly the state penitentiary. Prior to the conversion, DSHS notified local legislators of its plan and held a public meeting to explain the change. On September 20, 1979, the first adult felons were transferred to Cedar Creek.

On October 31, 1979, plaintiffs, residents of Thurston County, filed a taxpayers' complaint for declaratory judgment and injunctive relief, alleging that DSHS was without lawful authority or funds to operate Cedar Creek as an adult facility. The trial court found in favor of the plaintiffs but delayed implementation of the injunction for 60 days to give DSHS the opportunity to obtain legislative approval to operate Cedar Creek as an adult facility. During the 1980 legislative session, DSHS obtained funding for Cedar Creek as an adult correctional facility. Laws of 1980, ch. 167, § 1(1), p. 527.

On April 28, 1980, a post–trial hearing was held before the trial judge who ruled that the legislature had not cured all of the legal deficiencies found to exist at the time of trial. On April 30, 1980, the trial court entered a declaratory judgment and permanent injunction which was to become effective on May 3, 1980. The Department of Social and Health Services appealed to the Supreme Court, we

accepted review, and stayed the injunction. We reverse the trial court and hold for the defendant.

The questions before the court are: (1) Did DSHS have the statutory authority to convert Cedar Creek from a juvenile facility to an honor camp? and (2) If it had this authority, was it in fact operating Cedar Creek as an honor camp in accordance with the statutes?

██ The powers and authority of an administrative agency are limited to those which are expressly granted by statute or necessarily implied therein. *Taylor v. Morris*, 88 Wn.2d 586, 564 P.2d 795 (1977); *Barendregt v. Walla Walla School Dist. 140*, 26 Wn. App. 246, 611 P.2d 1385 (1980).

Under RCW 72.01.050, "The secretary [of DSHS] shall have full power to manage and govern . . . public institutions . . . as authorized by law, subject only to the limitations contained in laws relating to the management of such institutions." RCW 72.64.050 provides that, "The secretary [of DSHS] shall also have the power to establish temporary branch institutions for the state penitentiary, state reformatory and other penal and correctional institutions of the state in the form of honor camps . . ." Plaintiffs do not contend the statutes require Cedar Creek to be used only as a juvenile facility. *See* RCW 72.05.010. Authority exists for the conversion of the Cedar Creek facility to an honor camp.

The more difficult question is whether Cedar Creek was in fact operating as an honor camp. At the time of trial, 80 persons were at Cedar Creek. Of these, 37 were employed by the Department of Natural Resources and engaged in general forestry work of the type contemplated by RCW 72.64.050; 28 were employed by DSHS in jobs necessary to maintain the facility; and 15 were in work/training release.

██ Plaintiffs first contend, and the trial court in effect concluded, that Cedar Creek was not operating as an honor camp because 15 of the residents were in a work/training release program. Plaintiffs point to RCW 72.64.050 which lists those activities in which residents may engage.

Work/training release is not one of the listed activities. Therefore, plaintiffs argue Cedar Creek cannot be an honor camp but is, as the trial court concluded, an "adult minimum security correctional facility". Plaintiffs neglected, however, to cite RCW 72.65.020 which authorizes work/training release programs at state correctional institutions including honor camps. *See also* RCW 72.65.010(3). The fact that approximately 17 percent of the residents at Cedar Creek are in work/training release is immaterial. RCW 72.65.020 contains no maximum or minimum percentage requirement, and we will not read such a provision into the statute.

Next it is claimed, and the trial court found, that Cedar Creek is not being "operated on a temporary basis, and the DEPARTMENT OF SOCIAL AND HEALTH SERVICES intends to operate the facility indefinitely." This is alleged to be a violation of RCW 72.64.050 which authorizes honor camps to be established as "temporary branch institutions for the state penitentiary, state reformatory and other penal and correctional institutions of the state". Witnesses from DSHS testified Cedar Creek will operate as an adult facility only as long as it is necessary to ease the overcrowding in other adult facilities. Although DSHS did not specify a date on which the facility will close, it is programmed only through 1985. The record shows none of the other camps operated by the state has a date set for closure and all have been operated for a number of years.

■■ While an appellate court will sustain findings of fact which are supported by substantial evidence (*Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959)), here there is no substantial evidence that the facility is other than temporary. Furthermore, there is no requirement in RCW 72.64.050 that for a facility to be temporary DSHS must set a closing date at the time it is established. The fact that the witnesses from DSHS could not give a specific date when Cedar Creek would cease to operate as an honor camp is not substantial evidence that

the facility is other than temporary under the meaning of RCW 72.64.050.

Finally, the finding that Cedar Creek was not intended to be an honor camp is neither relevant nor is it supported by substantial evidence. Unquestionably, under the authority granted by RCW 72.64.050, 72.65.010 and .020, Cedar Creek is presently and has been since September 20, 1979, operated as an honor camp. What a representative of DSHS might have said Cedar Creek in his opinion was going to be is beside the point when in fact it has been and is being operated as an honor camp. Plaintiffs rely on a statement made by Gerald Thomas, an assistant secretary of DSHS, at a public meeting. Mr. Thomas said, as part of an extended answer to a lengthy question, "I have not considered Cedar Creek to be a substitute for an honor camp." Taken out of context, it would appear plaintiffs and the trial court are correct as to the understanding of at least one representative of DSHS as to the kind of facility Cedar Creek would be. Read in context, it is clear Mr. Thomas was comparing Cedar Creek to the other honor camps such as Larch Mountain and Clearwater and the facility at Indian Ridge. As Mr. Thomas tried to make clear, because of its accessibility as well as its educational opportunities and counseling, Cedar Creek would be a different kind of facility than Larch Mountain and Clearwater. The statements made by Mr. Thomas at what the record indicates was a public meeting of high emotion and great intensity and which were made in the context indicated are not sufficient to support a finding DSHS did not intend Cedar Creek to be an honor camp as authorized under the appropriate statutes.

Plaintiffs also contend that DSHS intentionally overexpended legislative appropriations for its adult corrections program in violation of RCW 43.88.290. They concede, however, that Laws of 1980, ch. 167, p. 527, corrected any funding problem for Cedar Creek effective April 4, 1980. Therefore, the issue is moot and we need not consider the merits of plaintiffs' allegation.

We hold DSHS has authority to establish an honor camp at Cedar Creek and is in fact operating the facility as an honor camp. Since this authority was exercised under existing statutes, it is unnecessary to discuss Laws of 1980, ch. 167, § 1(1), p. 527.

Reversed.

UTTER, C.J., and HOROWITZ, HICKS, and WILLIAMS, JJ., concur.

STAFFORD, J.—I dissent. Contrary to the majority's conclusion, it is apparent that appellants, the Department of Social and Health Services, have failed to comply with the requirements of RCW 72.64.050. Since its conversion to an adult facility, Cedar Creek Youth Camp has not been operated as an "honor camp" nor is it intended to be a *temporary* branch institution". Moreover, contrary to appellant's contention, Substitute House Bill 1533, 46th Legislature (1980), Laws of 1980, ch. 167, § 1(1), p. 527, does not, and cannot, authorize appellant to operate Cedar Creek as an adult correction facility. Appropriations bills may not be used for the enactment of substantive law. *Washington Educ. Ass'n v. State,* 93 Wn.2d 37, 604 P.2d 950 (1980).

As properly noted by the majority, the power and authority of an administrative agency are limited to those which are expressly granted by statute or necessarily implied therein. *Taylor v. Morris,* 88 Wn.2d 586, 564 P.2d 795 (1977). The only existing statutory authority to support the conversion of the Cedar Creek facility into an honor camp is RCW 72.64.050. In order for that statutory authority to be properly exercised, however, it is imperative that the institution be "temporary" in nature and "in the form of honor camps". It is evident from the record that neither requirement has been met.

First, the majority has failed to note the trial court expressly found "[t]he Cedar Creek facility is now, and has

been since September of 1979, operated as an adult minimum security correctional facility."[1] No assignment of error was made to this finding of fact, thus it must be accepted as a verity on appeal. *Yakima Cement Prods. Co. v. Great Am. Ins. Co.,* 93 Wn.2d 210, 608 P.2d 254 (1980).

Second, there is substantial evidence in the record to support the trial court's finding that "[t]he Cedar Creek facility is not being operated on a temporary basis, and the Department of Social and Health Services intends to operate the facility indefinitely."[2] Further, uncontested finding of fact No. 3 states that "Cedar Creek Youth Camp was converted to an adult facility because of increased overcrowding in adult facilities, and a drop in the juvenile population." Moreover, as noted by the majority, Cedar Creek will continue to operate as an adult facility as long as it is necessary to ease the adult facility overcrowding.

Overcrowding in the state correctional institutions is a continuing problem the solution of which is not likely to occur in the near future. If the continued operation of Cedar Creek as an adult facility depends upon a persistent overcrowding in adult facilities, there is nothing "temporary" about its operation.

It is obvious appellant was unable to give a specific date when Cedar Creek would cease to operate as an honor camp. This inability to fix the duration of the facility's operation is wholly contrary to the ordinary meaning of the word "temporary". "Temporary" is defined as "lasting for a time only: existing or continuing for a limited time: impermanent, transitory". *Webster's Third New International Dictionary* (1971). The majority simply ignores the common or accepted English definition and merely concludes the lack of a termination date "is not substantial evidence

---

[1] Finding of fact No. 11.

[2] Finding of fact No. 9.

that the facility is other than temporary under the meaning of RCW 72.64.050." The difficulty with the majority's position is that it is dependent upon no accepted definition of the word "temporary". Indeed, the majority goes further and defers explanation of the word to appellant, thus virtually begging the question. The majority states: "[a]lthough DSHS did not specify a date on which the facility will close, it is programmed only through 1985. The record shows none of the other camps operated by the state has a date set for closure and all have been operated for a number of years." But, the method of operating the other state honor camps is immaterial in determining whether Cedar Creek is in fact a "temporary" facility under RCW 72.64.050.

Appellant asserts that even if it failed to comply with the requirements of RCW 72.64.050, SHB 1533 authorizes operation of Cedar Creek as an honor camp. This contention is wholly without merit. SHB 1533 is nothing more than an appropriations bill designed to fund Cedar Creek for the present biennium as an adult correctional facility. The bill contains no substantive or authorizing legislation. Moreover, we have previously ruled that appropriations bills cannot be used for the enactment of substantive law. As noted in *Flanders v. Morris,* 88 Wn.2d 183, 191, 558 P.2d 769 (1977):

> We realize that in certain instances the legislature must place conditions and limitations on the expenditures of monies, but to the extent that such conditions or limitations have the effect of modifying or amending the general law they are unconstitutional enactments. An appropriations bill may not constitutionally be used for the enactment of substantive law which is in conflict with the general law as codified.

*Accord, Washington Educ. Ass'n v. State, supra; State ex rel. Washington Toll Bridge Auth. v. Yelle,* 54 Wn.2d 545, 342 P.2d 588 (1959).

456

I would affirm the trial court.

Rosellini, Wright, and Brachtenbach, JJ., concur with Stafford, J.